Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHLEEN MAGANA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>BELK INC.,<br><br>*Defendant*. | Case No. 3:26-cv-00673<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

## Table of Contents


I. Introduction. .......... 1

II. Parties. .......... 4

III. Jurisdiction and Venue. .......... 4

IV. Facts. .......... 5

A. Defendant's fake sales and discounts. .......... 5

C. Defendant's advertisements are unfair, deceptive, and unlawful. .......... 20

D. Defendant's advertisements harm consumers. .......... 21

E. Plaintiff was misled by Defendant's misrepresentations. .......... 22

F. Defendant breached its contract with and warranties to Plaintiff and the putative class. .......... 28

G. No adequate remedy at law. .......... 29

V. Class Action Allegations. .......... 30

VI. Claims. .......... 31

First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq. .......... 31

Second Cause of Action: Violation of California's Consumer Legal Remedies Act .......... 33

Third Cause of Action: Violation of California's Unfair Competition Law .......... 35

Fourth Cause of Action: Breach of Contract .......... 37

Fifth Cause of Action: Breach of Express Warranty .......... 38

Sixth Cause of Action: Quasi-Contract/Unjust Enrichment .......... 39

Seventh Cause of Action: Negligent Misrepresentation .......... 40

Eighth Cause of Action: Intentional Misrepresentation .......... 41

VII. Relief. .......... 42

## I. Introduction.

1. Advertised “sale” prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2. While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3. Section 17500 of California’s False Advertising Law prohibits businesses from making statements that they know or should know are untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4. Moreover, section 17501 of California’s False Advertising Law provides, “[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding” the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits advertising a former price that was not the prevailing price in the prior three months.

5. In addition, California’s Consumer Legal Remedies Act prohibits “advertising goods or services with the intent not to sell them as advertised,” and specifically prohibits “false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.” Cal. Civ. Code § 1770(a)(9), (13).

6. Additionally, the Federal Trade Commission’s regulations prohibit false or misleading “former price comparisons,” for example, making up “an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction” off of that price. 16 C.F.R. § 233.1. They also prohibit false or misleading “retail price comparisons” and “comparable value comparisons,” for example, ones that falsely suggest that the seller is “offer[ing] goods at prices lower than those being charged by others for the same merchandise” when this is not the case. 16 C.F.R. § 233.2.

7. As numerous courts have found, fake sales violate these laws. And, they also violate California's general prohibition on unlawful, unfair, and deceptive business practices. See Cal. Bus. & Prof. Code § 17200.

8. Defendant Belk Inc. ("Defendant" or "Belk") manufactures, markets, and sells Belk Exclusive Brand products, which include but are not limited to clothing, personal goods, and home goods products branded under various Belk brand names, including Joyland, Kim Rogers, Cooks Tools, Belk Beauty, Crown & Ivy, Wonderly, Belk Silverworks, Ocean + Coast, Biltmore, Modern Southern Home, Belk Sterling Silver, Pro Tour, The Limited, Zelos, Saddlebred, Belk & Co, Parisian Intimates, True Craft, Madison, Home Accents, Evi & Emma, New Directions, Cabana by Crown & Ivy, Team of Tiny, goodness & grace, and Kaari Blue ("Belk Exclusive Brand Products" or "Products"). Belk Exclusive Brand Products are sold exclusively by Belk, including through the Belk website, www.belk.com.

9. Defendant advertises purported regular prices and purported limited-time sales offering steep discounts from those listed regular prices. Defendant consistently advertises sales (for example "Up to 50% OFF," "Up to 60% OFF, or "Up to 70% OFF") with a constant stream of promotions. Here are some illustrative examples:




*Captured March 8, 2024*




*Captured September 22, 2025*

10. Defendant also consistently advertises its Products with strikethrough pricing, displaying a purported discount price alongside the purported regular price appearing in strikethrough font, like the following:




*Captured January 12, 2026*

11. But these are not time-limited discounts. To the contrary, the purported discounts on Defendant's Products are almost always available. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited time—quite the opposite, they are consistently available.

12. As described in greater detail below, after reviewing Defendant's website, www.belk.com, and seeing and relying on advertised sales, Plaintiff bought Products from Defendant. When Plaintiff made her purchases, Defendant advertised that a purported sale was going on, and Plaintiff believed that she was being offered steep discounts from the purported regular prices that Defendant advertised. And based on Defendant's representations, Plaintiff believed that she was purchasing Products whose regular prices and market values were the purported list prices that Defendant advertised, that she was receiving substantial discounts, and that the opportunity to

get those discounts was time-limited. These reasonable beliefs caused Plaintiff to buy from Defendant.

13. The representations that Plaintiff relied on, however, were not true. The purported regular prices Defendant advertised were not the true regular prices at which Defendant usually sells the Products. The purported discounts were not true discounts, and the sales were ongoing—not time-limited. Had Defendant been truthful, Plaintiff and other consumers like her would not have purchased the Products, or would have paid less for them.

14. Plaintiff brings this case for herself and other customers who purchased Belk Exclusive Brand Products from Defendant.

## II. Parties.

15. Plaintiff Kathleen Magana is domiciled in Oakland, California.

16. The proposed class includes citizens of California.

17. Defendant Belk Inc. is a Delaware corporation that maintains its principal place of business in North Carolina at 2801 West Tyvola Road, Charlotte, NC 28217.

## III. Jurisdiction and Venue.

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

19. The Court has personal jurisdiction over Defendant because Defendant sold Belk Exclusive Brand Products to consumers in California, including to Plaintiff.

20. Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Belk Exclusive Brand Products to consumers in California and this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sales to Plaintiff.

**IV. Facts.**

**A. Defendant's fake sales and discounts.**

21. Defendant manufactures, markets, and sells Belk Exclusive Brand products, directly to consumers through its website, www.belk.com.

22. Defendant creates the false impression that its Products' regular prices are higher than they truly are.

23. At any given time, on its website, Defendant advertises steep discounts on its Products. Defendant consistently advertises sales (for example "Up to 50% OFF," "Up to 60% OFF, or "Up to 70% OFF") with a constant stream of promotions. As soon as one ends, the next one begins. Here are some illustrative examples:




*Captured March 15, 2023*




*Captured April 23, 2023*




*Captured May 14, 2023*




*Captured June 25, 2023*




*Captured March 8, 2024*




*Captured April 29, 2024*




*Captured June 1, 2024*




*Captured May 6, 2024*




*Captured August 7, 2024*




*Captured October 2, 2024*

24. Defendant also lists the discount prices for its Products alongside the listed regular prices appearing in strikethrough font. Example screenshots are provided on the following pages. The first one is from the overview page of the various brands of Belk Exclusive Brand Products:




*Captured January 12, 2026*

25. And these are representative pages for various brands of Belk Exclusive Brand Products—e.g., Wonderly, Joyland, and Kim Rogers:




*Captured January 12, 2026*




*Captured January 12, 2026*




*Captured January 12, 2026*

26. Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely. Defendant leads reasonable consumers to believe that Defendant's sales are only available for a limited time, but in truth, they either continue constantly or are continuously replaced by similar sales. The list (or strike-through) prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.

27. The continuing nature of Defendant's purported sales is shown by Google Shopping data (which shows the "typical" price for products "over the past 12 months"). Google Shopping data shows that Belk Exclusive Brand Products are typically sold at the discounted prices shown on Defendant's website and nowhere near the advertised regular prices on Defendant's website.

28. As an illustrative example, Belk advertises its Queen Size Modern Southern Home Rae Comforter Set on its website with a discounted price of $79.95 and a regular list price of $180.00.




*Captured January 20, 2026*

29. And Google Shopping data shows that this same product is "[t]ypically" sold in the range of "$75-80," which is at or near the purportedly discounted price appearing on Defendant's website ($79.95) and nowhere near Defendant's advertised regular price of $180.00. Google Shopping data also provides a chart tracking the price "over the past 12 months." It shows that the Product was sold at its advertised regular price just two days out of 365 (less than 1% of the time).




*Captured January 20, 2026*

30. As another illustrative example, Belk advertises its Queen Size Biltmore Egyptian Cotton Damask Sheets on its website with a discounted price of $134.99 and a regular list price of $310.00.




*Captured January 20, 2026*

31. For this product, Google Shopping data shows that the price history "over the past 12 months" largely fluctuated between $98 and $135, which is at or below the discounted appearing on Defendant's website ($134.99), and the price was never anywhere near Defendant's advertised regular price of $310.00:







*Captured January 20, 2026*

32. The pricing pattern shown in these illustrative examples holds true across Belk Exclusive Brand Products. For example, the following chart shows the discounted price and regular price appearing for the first 16 products appearing on the Belk Exclusive Brand page on January 12, 2026, as well as the typical price for the corresponding product appearing on Google Shopping:

| Product | Discount price on Belk.com | Regular price on Belk.com | Typical price (Google Shopping data) |
|---|---|---|---|
| Belk Beauty Signature Scents For Her | $14.99 | $39.00 | Typically $18-$25 |
| Kim Rogers® Women's Side Rib Vest | $17.99 | $49.50 | Typically $17-$18 |
| Cooks Tools™ 3 Piece Bake and Take Set | $17.95 | $36.00 - $45.00 | Typically $15 |
| Kim Rogers® Women's Side Rib Puff Jacket | $19.99 | $69.50 | Typically $20-$22 |
| Kim Rogers® Women's Cable Knit Cardigan | $17.99 | $59.50 | Typically $20-$22 |
| Kim Rogers® Women's V-Neck Cable Knit Sweater | $16.99 | $49.50 | Typically $17 |
| Wonderly Kennedy Booties | $32.00 | $80.00 | Typically $32-$40 |
| Joyland 7.5' Pre Lit Flocked Christmas Tree | $70.00 | $350.00 | no data available on Google shopping |
| Crown & Ivy™ Evelyn Block Heel Heels | $39.99 - $40.00 | $80.00 | Typically $40 |
| Kim Rogers® Women's 3/4 Sleeve Crew Neck Printed T-Shirt | $9.75 - $12.99 | $32.50 | Typically $13 |
| Kim Rogers® Marina Booties | $36.00 | $90.00 | Typically $35-$36 |
| Crown & Ivy™ Women's Pointelle Pajama Set | $21.99 - $22.35 | $74.50 | Typically $22 |
| Bitmore® Egyptian 625 Thread Count Sheet Set | $59.50 - $149.99 | $170.00 - $350.00 | Typically $54 -$100 |
| Kim Rogers® Women's Millenium Average Pants | $24.99 | $59.50 | Typically $25 |
| Kim Rogers® Women's Pull On Denim Jeans | $24.99 | $59.50 | Typically $25 |

| | | | |
|---|---|---|---|
| Crown & Ivy™ Women's Long Sleeve Barn Jacket | $59.70 | $99.50 | Typically $40-$45 |

33. Reasonable consumers do not realize the fake nature of the sale. It is not apparent from merely purchasing the Products, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale. Discovering Defendant's deception requires extensive monitoring or research of Defendant's website and pricing.

34. Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts on its home page, product line pages, individual product pages, as well as throughout the purchasing process. And they do so in substantially the same format, displaying the fake regular price in strike-through format alongside the purported discounted price. As an illustrative example, the product page for the "Kim Rogers V-Neck Cable Knit Sweater" is depicted below. It shows the discounted price ("$16.99") alongside the advertised regular price in strikethrough format ("$49.50"):




*Captured January 20, 2026*

35. This deceptive pricing is repeated throughout the purchasing process. The “shopping bag” pop-up windows for Belk’s Products repeat the same fake prices and fake discounts in substantially the same format. They too display the fake regular price in strike-through format alongside the discounted sale price. For example, the “shopping bag” pop-up window for the “Kim Rogers V-Neck Cable Knit Sweater” is depicted to the right, showing the discounted price (“$16.99”) alongside the advertised regular price in strikethrough format (“$49.50”).




*Captured January 20, 2026*

36. The Order Summary also includes the fake prices and fake discounts. For example, the Order Summary for the “Kim Rogers V-Neck Cable Knit Sweater” is depicted below. It displays the discounted sale price “$16.99” and the purported savings off of the advertised regular price of $49.50: “You Save $32.51.”




*Captured January 20, 2026*

37. But the truth is, the listed regular prices that appear on Belk's Product pages and "shopping bag" (e.g., "$49.50" for the "Kim Rogers V-Neck Cable Knit Sweater") are not its regular prices. Instead, its regular prices are much lower, because Defendant almost always offers steep discounts on its Products. As a result, Defendant's customers did not receive a true discount. They received a much lower discount, or no discount at all.

38. Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the limited-time promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

39. Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendant's website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list

prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, and after the sale ends, consumers buying from Defendant on its website had to (or will have to) pay the list price to get the item and did not (or will not) have the opportunity to get a discount from that list price.

40. Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market values of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant almost always offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells. And, the list prices do not represent the true market value for the Products, because Defendant's Products are almost always available for less than that on Defendant's website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discounts the customer is receiving, and are often not discounts at all. Nor are the purported discounts limited-time—quite the opposite, they are consistently available.

**C. Defendant's advertisements are unfair, deceptive, and unlawful.**

41. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it is not.

42. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

43. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or

misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

44. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2.

45. And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. See Cal. Bus. & Prof. Code § 17200.

46. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engages in unlawful, unfair, and deceptive business practices.

**D. Defendant's advertisements harm consumers.**

47. Based on Defendant's advertisements, reasonable consumers expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products, that these are former prices that Defendant sold its Products at before the time-limited discount was introduced, and that they are the prevailing market prices for the Products.

48. Reasonable consumers also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

49. In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

50. Consumers who are presented with discounts are substantially more likely to make a purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[1] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[2]

51. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[3]

52. Thus, Defendant's false advertising harms consumers by depriving them of their reasonable expectations. In addition, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

**E. Plaintiff was misled by Defendant's misrepresentations.**

53. On December 18, 2024, Ms. Magana bought several items from Defendant's website, www.belk.com, including a Crown & Ivy Plus Size Printed Notch Pajama Set. Defendant was offering a heavy discount off of the purported regular price on the Crown & Ivy Plus Size Printed

---

[1] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[2] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[3] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

Notch Pajama Set. Before tax and shipping, Ms. Magana paid the purported discount price of $20.85:




54. When Ms. Magana purchased the Crown & Ivy Plus Size Printed Notch Pajama Set on December 18, 2024, the advertised discount was presented in substantially the same manner described above. And more than a year later, Belk still advertises the Crown & Ivy Plus Size Printed Notch Pajama Set in substantially the same manner: listing the regular price, or strikethrough price ("$69.50") alongside a discounted price ("$20.85").




*Captured January 20, 2026*

55. And Google Shopping data confirms that, for the "past 12 months," the Crown & Ivy Plus Size Printed Notch Pajama Set has "[t]ypically" been sold for "$21" which is at or near the purportedly discounted price appearing on Defendant's website ($20.85) and nowhere near Defendant's advertised regular price of $69.50. In fact, the data does not show a single day when the product has been sold above the purported discounted price. Instead, it has been sold approximately at or below what Ms. Magana paid:




*Captured January 20, 2026*

56. Similarly, a year earlier, on December 7, 2023, Ms. Magana also bought several items from Defendant's website, www.belk.com, including two Wonderly Plus Size Long Sleeve Drop Shoulder Open Front Cardigans. At the time of her purchase, Defendant was offering a heavy discount off of the purported regular price on the Wonderly Plus Size Long Sleeve Drop Shoulder Open Front Cardigans. The purported discount price was $21.99:




57. When Ms. Magana purchased the Wonderly Plus Size Long Sleeve Drop Shoulder Open Front Cardigans on December 7, 2023, the advertised discount was presented in substantially the same manner described above. The Plus Size version is not currently available on Defendant's website, but two years later Belk still advertises the Wonderly Women's Drop Shoulder Open Front Cardigan in substantially the same manner: listing the regular price, or strikethrough price ("$54.50") alongside a discounted price ("$16.35").[4]

[4] Belk's Plus Size versions typically cost a few dollars more than the non-Plus Size versions, and the discounts mirror one another.




*Captured January 20, 2026*

58. And Google Shopping data confirms that, for the "past 12 months," the Wonderly Women's Drop Shoulder Open Front Cardigan has "[t]ypically" been sold for "$16" which is at or near the purportedly discounted price appearing on Defendant's website ($16.35) and nowhere near Defendant's advertised regular price of $54.50. In fact, the data does not show a single day when the product has been sold above the purported discounted price. Instead, it has been sold approximately at or below the purported discount price:




*Captured January 20, 2026*

59. Ms. Magana made each of these purchases while living in Oakland, California. For each purchase, Ms. Magana saw and relied on the representations on Belk's website that she was receiving Products with a particular value and/or market price and that she was receiving a price reduction. She would not have purchased the Products if she knew that Belk's Products were not discounted as advertised, that she was not receiving Products with the advertised value and/or market price, and that she was not receiving the advertised discount.

60. Prior to making her purchases, Plaintiff reviewed Defendant's website and saw that Defendant was advertising these substantial, time-limited discounts. Plaintiff read and relied on the representations (like those shown above) on Defendant's website, including that the Products had the regular prices listed on the website in strikethrough font, but were being offered at a discounted sale price from those regular prices, and that the sale was time-limited. Based on Defendant's representations described above, Plaintiff reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Products she was purchasing at the published regular prices (shown in strikethrough font), that these regular prices were the prevailing price and market value of the Products that she was buying, that she was receiving the

advertised discounts as compared to the regular prices, that advertised discounts were only available for a limited time (during the limited-time promotion), and that the Products would go back to retailing for the published regular prices when the promotion ended. She would not have made the purchases if she had known that the Products were not discounted as advertised, and that she would not be receiving the advertised discounts.

61. In reality, as explained above, Belk's Products, including the Products that Plaintiff purchased, are regularly available at a discount from the purported regular prices. In other words, Defendant did not regularly sell the Products that Plaintiff purchased at the purported regular prices, and the Products were not discounted as advertised. Plus, the sales were not limited time—Defendant's products are regularly on sale.

62. Plaintiff faces an imminent threat of future harm. She would purchase additional Products in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while she could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in missing out on the sale (e.g., if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so she cannot purchase the Products that she would like to purchase.

**F. Defendant breached its contract with and warranties to Plaintiff and the putative class.**

63. When Plaintiff, and other members of the putative class, purchased and paid for the Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the advertised discounted price.

64. Defendant's advertisements, for example on its website, and in its price quotations, list the market value of the items that Defendant promised to provide as detailed above. Defendant

agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Plaintiff and the putative class.

65. Defendant also warranted that the regular price and market value of the Products Plaintiff purchased were the advertised list prices and warranted that Plaintiff was receiving a specific discount on the Products.

66. The regular price and market value of the items Plaintiff and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

67. Plaintiff and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

68. Defendant breached its contract by failing to provide Plaintiff and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendant also breached warranties for the same reasons.

**G. No adequate remedy at law.**

69. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

70. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

71. In addition, to obtain a full refund as damages, Plaintiff must show that the Products she bought have essentially no market value. In contrast, Plaintiff can seek restitution without

making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

72. Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

73. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase the Products she would like to purchase.

**V. Class Action Allegations.**

74. Plaintiff brings the asserted claims on behalf of the proposed class:

- California Class: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Belk Exclusive Brand Products that were advertised at a discount on Defendant's website.

75. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity***

76. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class members. Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

77. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

***Typicality & Adequacy***

78. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased Belk's Products advertised at a discount. There are no conflicts of interest between Plaintiff and the class.

***Superiority***

79. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

### First Cause of Action:

### Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq.

### (By Plaintiff and the California Class)

80. Plaintiff incorporates each and every factual allegation set forth above.

81. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

82. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

83. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and class members.

84. As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (e.g., $70) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices advertised in strikethrough font from which time-limited discounts are calculated to denote "former" prices (i.e., the prices that Defendant charged before the time-limited discount went into effect.).

85. The prices advertised by Defendant are not Defendant's regular prices. Those prices are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there is consistently a heavily advertised promotion ongoing entitling consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements indicating that its discounts are limited in time are false and misleading too.

86. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

87. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchasing decision.

88. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.).

89. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

90. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

91. For the claims under California's False Advertising Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Second Cause of Action:**

**Violation of California's Consumer Legal Remedies Act**

**(By Plaintiff and the California Class)**

92. Plaintiff incorporates each and every factual allegation set forth above.

93. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

94. Plaintiff and the California Class are "consumers," as the term is defined by California Civil Code § 1761(d).

95. Plaintiff and the California Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

96. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

97. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

98. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

99. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for its Products.

100. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

101. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (e.g., beginning of "School Year") when in fact Defendant has ongoing sales.

102. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

103. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchasing decision.

104. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

105. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Class.

106. Plaintiff and the California Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

107. Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the California Class, seeks injunctive relief.

108. CLRA § 1782 NOTICE. On December 11, 2025, a CLRA demand letter on behalf of Ms. Magana was sent to Defendant's North Carolina headquarters via certified mail. The letter provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Defendant did not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt, so Plaintiff seeks all monetary remedies available under the CLRA, including damages and attorney fees. See Cal. Civ. Code § 1782(d).

109. The CLRA venue declaration is attached.

**<u>Third Cause of Action</u>:**

**Violation of California's Unfair Competition Law**

**(By Plaintiff and the California Class)**

110. Plaintiff incorporates each and every factual allegation set forth above.

111. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

112. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

113. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the Federal Trade Commission Act (FTCA). The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 USC § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1.

***The Deceptive Prong***

114. As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

115. Defendant's representations were misleading to Plaintiff and other reasonable consumers.

116. Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

117. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

118. Defendant violated established public policy by violating the CLRA, FAL, and FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, FAL, and FTCA).

119. The harm to Plaintiff and the California Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

120. Plaintiff and the California Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

121. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

122. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the Products. Defendant's representations were a substantial factor in Plaintiff's purchasing decision.

123. In addition, class-wide reliance can be inferred because Defendant's representations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy the Products).

124. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Class members.

125. Plaintiff and the California Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

126. For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the California Class as a result of Defendant's unlawful conduct.

**Fourth Cause of Action:**

**Breach of Contract**

**(By Plaintiff and the California Class)**

127. Plaintiff incorporates each and every factual allegation set forth above.

128. Plaintiff brings this cause of action on behalf of herself and the California Class.

129. Plaintiff and class members entered into contracts with Belk when they placed orders to purchase Products.

130. The contracts provided that Plaintiff and class members would pay Belk for the Products ordered.

131. The contracts further required that Belk provide Plaintiff and class members with Products that have a market value equal to the advertised list prices. They also required that Belk provide Plaintiff and the class members with the discount advertised. These were specific and material terms of the contract.

132. The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and class members at the time they placed their orders.

133. Plaintiff and class members paid Belk for the Products they ordered, and satisfied all other conditions of their contracts.

134. Belk breached the contracts with Plaintiff and class members by failing to provide Products that had a prevailing market value equal to the list price, and by failing to provide the promised discount. Belk did not provide the discount that Belk had promised.

135. Plaintiff provided Defendant with notice of this breach, by mailing notice letters to Defendant's registered agent and its North Carolina headquarters on December 11, 2025.

136. As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

137. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the other class members as a result of Defendant's unlawful conduct.

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(By Plaintiff and the California Class)**

138. Plaintiff incorporates each and every factual allegation set forth above.

139. Plaintiff brings this cause of action on behalf of herself and the California Class.

140. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of the Products, issued material, written warranties by advertising that the Products had a prevailing market

value equal to the list price. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

141. This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

142. In fact, the Products' stated market values were not the prevailing market values. Thus, the warranty was breached.

143. Plaintiff provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's registered agent and its North Carolina headquarters on December 11, 2025.

144. Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

145. For their breach of express warranty claims, Plaintiff seeks all damages available, including expectation damages and/or damages measured by the price premium charged to Plaintiff and the other class members as a result of Defendant's unlawful conduct.

**Sixth Cause of Action:**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiff and the California Class)**

146. Plaintiff incorporates paragraphs 1-62, 69-73.

147. Plaintiff brings this cause of action in the alternative to her Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the California Class.

148. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase the Products and to pay a price premium for these Products.

149. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

150. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other class members are void or voidable.

151. Plaintiff and the class seek restitution, and in the alternative, rescission.

152. For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the class as a result of Defendant's unlawful conduct.

**<u>Seventh Cause of Action</u>:**

**Negligent Misrepresentation**

**(By Plaintiff and the California Class)**

153. Plaintiff incorporates each and every factual allegation set forth above.

154. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

155. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and class members concerning the existence and/or nature of the discounts and savings advertised.

156. These representations were false.

157. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

158. Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

159. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

160. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

161. Plaintiff and the California Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a

price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

162. For the negligent misrepresentation claim, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the California Class as a result of Defendant's unlawful conduct.

**<u>Eighth Cause of Action</u>:**

**Intentional Misrepresentation**

**(By Plaintiff and the California Class)**

163. Plaintiff incorporates each and every factual allegation set forth above.

164. Plaintiff brings this cause of action on behalf of herself and members of the California Class.

165. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and class members concerning the existence and/or nature of the discounts and savings advertised.

166. These representations were false.

167. When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

168. Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

169. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

170. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

171. Plaintiff and the California Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a

price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

172. For the intentional misrepresentation claim, Plaintiff seeks all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the California Class as a result of Defendant's unlawful conduct.

## VII. Relief.

173. Plaintiff seeks the following relief for herself and the class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just and equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## **Demand For Jury Trial**

174. Plaintiff demands the right to a jury trial on all claims so triable.

Dated: January 21, 2025

Respectfully submitted,

By: */s/ Richard Lyon*

Richard Lyon (Cal. Bar No. 229288)
rick@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorney for Plaintiff*